**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION | ) ) ) |
| | ) ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) |
| | ) ) ) ) |

MASTER FILE NO.
07 CIV. 6377 (SAS)

**ECF Case**

_____

**MEMORANDUM OF LAW OF DEFENDANTS AMARANTH LLC, AMARANTH INTERNATIONAL LIMITED, AMARANTH CAPITAL PARTNERS LLC, AND AMARANTH PARTNERS LLC IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**

Amelia T.R. Starr (AS 2286)
Sheldon L. Pollock (SP 8696)
Dharma B. Frederick (DF 1821)
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 450-3800

*Counsel to Amaranth LLC*

Herbert S. Washer (HW 2375)
Adam S. Hakki (AH 3561)
Kirsten N. Cunha (KC 0283)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Tel.: (212) 848-4000
Fax: (212) 848-7179

*Counsel to Amaranth International Limited*

Dated:  June 23, 2008

# TABLE OF CONTENTS

PAGE

**PRELIMINARY STATEMENT** ................................................................... 1

**FACTUAL BACKGROUND** ......................................................................... 3

    A.    Parties .................................................................................................. 3

    B.    Allegations Against the Passive Investment Funds ..................................... 5

**LEGAL STANDARD** ..................................................................................... 6

**ARGUMENT** .................................................................................................. 7

I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR MANIPULATION UNDER THE CEA AGAINST THE PASSIVE INVESTMENT FUNDS (COUNT I) ....... 7

    A.    Plaintiffs Lack Standing to Sue the Feeder Funds as Primary Violators .... 8

    B.    Plaintiffs' Allegations Regarding Direct Market Manipulation Fail with Respect to All the Passive Investment Funds. ........................................... 9

        1.    Plaintiffs Lack Standing to Assert Manipulation of Settlement Prices. ...................................................................................... 10

        2.    Plaintiffs' Broader Market Manipulation Theory Also Fails to Satisfy Any Pleading Standard. ............................................................... 10

            (a)    Plaintiffs Do Not Plead Market Manipulation with the Requisite Particularity Under Rule 9(b). .......................... 11

            (b)    Even Under a More Relaxed Pleading Standard, Plaintiffs Fail in Count I to State a Claim for Which Relief Can Be Granted. ...................................................................... 12

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING, VICARIOUS LIABILITY, OR CONTROLLING PERSON LIABILITY AGAINST THE PASSIVE INVESTMENT FUNDS UNDER THE CEA (COUNT II). ...... 13

    A.    Plaintiffs' Aiding and Abetting Claim Fails. ........................................... 13

    B.    Plaintiffs' Vicarious Liability Claim Fails ............................................... 15

    C.    There Is No Private Right of Action for Controlling Person Liability Under the CEA ................................................................................................. 20

i

1.      Section 13(b) of the CEA Does Not Provide a Private Right of Action. ................................................................................................ 21

2.      There Is No Private Action for Violations of CFTC Rule 166.3. . 22

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT V). ....................................................................................................... 23

**CONCLUSION** ........................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE

**Cases**

Am. Agric. Movement v. Bd. of Trade of Chicago, 977 F.2d 1147 (7th Cir. 1992) ..................... 9

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007)......................................... 6

Baghdady v. Robbins Futures, Inc., No. 97-C-8794, 1999 WL 162789 (N.D. Ill. Mar. 12, 1999) ................................................................................................................................... 22

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................. 7, 12

Bellikoff  v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007)..................................................... 20

Benfield v. Mocatta Metals Corp., No. 91-Civ-8255, 1992 WL 177154 (S.D.N.Y. July 13, 1992) ............................................................................................................................ 14

Benfield v. Mocatta Metals Corp., No. 91-Civ-8255, 1992 WL 58879 (S.D.N.Y. Mar. 13, 1992) ............................................................................................................................ 14

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) .............................................................................................................................. 20

CFTC v. Carnegie Trading Group Ltd., 450 F. Supp. 2d 788 (N.D. Ohio 2006)......................... 22

Champ v. Siegel Trading Co., No. 89-C-7148, 1990 WL 19984 (N.D. Ill. Feb. 27, 1990) ........ 21

Cleveland v. Caplaw Enters., 448 F.3d 518 (2d Cir. 2006)........................................................ 16

Clifford R. Gray, Inc. v. Le Chase Constr. Servs., LLC, 31 A.D.3d 983 (3d Dep't 2006) .... 23, 24

Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd., No. 97 Civ. 3802, 1998 WL 782024 (S.D.N.Y. Nov. 6, 1998) ................................................................................................... 16

Credit Suisse Sec. (USA) LLC v. Billing, 127 S. Ct. 2383 (2007)............................................... 23

Damato v. Hermanson, 153 F.3d 464 (7th Cir. 1998) ................................................................ 14

DGM Invs., Inc. v. N.Y. Futures Exch., Inc., 265 F. Supp. 2d 254 (S.D.N.Y. 2003) ................. 23

Ez-Tixz, Inc. v. Hit-Tix, Inc., No. 93 Civ 3791 (CSH), 1995 WL 77589 (S.D.N.Y. Feb. 27, 1995) ............................................................................................................................ 17

FDIC v. FSI Futures, Inc., No. 88 Civ 0906, 1990 U.S. Dist. LEXIS 2907 (S.D.N.Y. Mar. 13, 1990)................................................................................................................. 7, 12

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994) ................................... 7

Fustok v. ContiCommodity Servs., Inc., 618 F. Supp. 1069 (S.D.N.Y. 1985) ............................. 22

Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc., 706 F. Supp. 221 (S.D.N.Y. 1989) ................................................................................................................................. 7, 9

In re AM Int'l Inc. Sec. Litig., 606 F. Supp. 600 (S.D.N.Y. 1985) .............................................. 18

In re Bayou Hedge Fund Inv. Litig., 472 F. Supp. 2d 528 (S.D.N.Y. 2007) ................................ 24

In re Crude Oil Commodity Litig., No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................................................................................. 6, 7, 10

In re Fidelity/Micron Sec. Litig., 964 F. Supp. 539 (D. Mass. 1997) .......................................... 17

In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152 (D. Mass. 2002) ................................ 19

In re Natural Gas Commodity Litig., 337 F. Supp. 2d 498 (S.D.N.Y. 2004) .................. 15, 19, 20

In re Natural Gas Commodity Litig., 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ........................ 11, 14

Khalid Bin Alwaleed Found. v. E.F. Hutton & Co., Inc., 709 F. Supp. 815 (N.D. Ill. 1989) .................................................................................................................................... 20

Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255 (2d Cir. 2006) ...................................................................................................................................... 9

Kolbeck v. LIT America, 923 F. Supp. 557 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998) ............................................................................................................................. passim

Korwek v. Hunt, 646 F. Supp. 953 (S.D.N.Y. 1986) .................................................................... 21

Krause v. Forex Exchange Mkt., 356 F. Supp. 2d 332 (S.D.N.Y. 2005) ..................................... 14

Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 179 F. Supp. 2d 118 (S.D.N.Y. 2000) ......................................................................................... 22

Louis Vuitton Malletier v. Dooney & Bourke, 500 F. Supp. 2d 276 (S.D.N.Y. 2007) .......... 24, 25

Meyer v. Holley, 537 U.S. 280 (2003) ......................................................................................... 17

Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc., 14 F. Supp. 2d 331 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999) ..................................................... 24

Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 619 F. Supp. 727 (S.D.N.Y. 1985) ................................................................................................................................. 9, 21

iv

Modica v. Modica, 791 N.Y.S.2d 134 (2d Dep't 2005) ................................................. 25

Nicholas v. Saul Stone & Co. LLC, No. Civ. 97-860, 1998 WL 34111036 (D.N.J. June
    30, 1998), aff'd, 244 F.3d 179 (3d Cir. 2000) ....................................................... 22

Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290 (N.D. Ga. 2005) ...................................... 13

Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. Sirmer, No. 89-C-2239,
    1989 WL 165155 (N.D. Ill. Dec. 27, 1989)............................................................. 15

Reading Int'l v. Oaktree Capital Mgmt., 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ........................ 24

Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678 (11th Cir. 2001) .............................. 15

Rudd v. KeyBank, N.A., No. C2-05-CV-0523, 2006 WL 212096 (S.D. Ohio Jan. 25,
    2006) ............................................................................................... 12

SEC v. U.S. Envt'l, Inc., 82 F. Supp. 2d 237 (S.D.N.Y. 2000) ...................................... 11

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002)...................................... 12

Stoneridge Inv. Partners, LLC v. Scientific Atlanta, 128 S. Ct. 761 (2008) .............................. 20

Sundial Int'l Fund v. Delta Consultants, 923 F. Supp. 38 (S.D.N.Y. 1996)................................... 9

Tatum v. Legg Mason Wood Walker, Inc., 83 F.3d 121 (5th Cir. 1996) .................................... 14

**Statutes, Rules and Regulations**

17 C.F.R. § 166.3 .................................................................................. 21, 22

7 U.S.C. § 1, et seq.............................................................................. 2, 23

7 U.S.C. § 2(a)(1)(B) ............................................................................. 15, 19

7 U.S.C. § 6b ........................................................................................ 21

7 U.S.C. § 6(b) ...................................................................................... 21

7 U.S.C. § 9 .......................................................................................... 9

7 U.S.C. § 13 ........................................................................................ 10

7 U.S.C. § 13b ........................................................................................ 9

7 U.S.C. § 13c(b) .................................................................................... 21

7 U.S.C. § 25 ................................................................................................................. passim

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1

Fed. R. Civ. P. 8(a) .................................................................................................. passim

Fed. R. Civ. P. 9(b) .................................................................................................. passim

## Other Authorities

Carl J. Nelson, Note, <u>Hedge Fund Regulation: A Proposal to Maintain Hedge Funds'
Effectiveness without SEC Regulation</u>, 2 Brook. J. Corp. Fin. & Com. L. 221 (2007) ........... 4

H.R. REP. NO. 565, at 126, <u>as reprinted in</u> 1982 U.S.C.C.A.N., at 3975 ................................... 22

Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) .............................................................. 16

S. REP. No. 101-337 (1990) ......................................................................................... 23

Defendants Amaranth LLC (the "Master Fund"), Amaranth International Limited ("AIL"), Amaranth Capital Partners LLC, and Amaranth Partners LLC (together, the "Domestic Feeders" and together with AIL, "the Feeder Funds"), (collectively, the Master Fund and the Feeder Funds are referred to herein as the "Passive Investment Funds" or the "Funds") respectfully submit this memorandum of law in support of their motions to dismiss with prejudice Plaintiffs' Corrected Consolidated Class Action Complaint dated February 14, 2008 (the "Complaint" or "Compl."), pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and 8(a) of the Federal Rules of Civil Procedure.  The Passive Investment Funds join and incorporate by reference the arguments of all other Defendants in their motions to dismiss to the extent applicable.[1]

## PRELIMINARY STATEMENT

The Passive Investment Funds should never have been named in this matter.  Plaintiffs do not allege that the Funds engaged in manipulation or any other unlawful conduct.  Indeed, Plaintiffs do not even allege facts supporting an inference that the Funds knew of the alleged manipulation.  That is fatal to Plaintiffs' claims against the Funds.  The Commodities Exchange Act (the "CEA") does not permit claims against parties not alleged to have been responsible for the wrongful conduct.

It is not surprising that the Funds have no liability.  What is surprising is that they were named as defendants in this case.  The Commodity Futures Trading Commission ("CFTC") filed a case in this district (before Judge Chin) against the Master Funds' investment adviser and other defendants under the CEA arising out of the same trading that gives rise to this action.  Notably, the CFTC did not name the Funds as defendants or suggest that they have any potential liability.

_____

[1] As required by the Court's rules, the Passive Investment Funds sent letters to Plaintiffs' counsel articulating the grounds for this motion.

The CFTC's decision not to name the Funds is consistent with the statute and case law rejecting liability on the part of passive investment funds.

The Funds were created to pool investor assets so that they could be managed by an investment adviser. This basic arrangement – where a passive investment company is established and confers investment authority on an independent adviser – is the standard arrangement used by mutual funds and hedge funds. Specifically, the Feeder Funds invested in the Master Fund, which in turn, contracted with Amaranth Advisors L.L.C. ("Advisors") for Advisors to trade the Master Fund's assets. Thus, it is Advisors' trading – and not anything the Funds did – that gives rise to the claims in this action, as recognized by the CFTC when it declined to pursue claims against the Funds.

Since Plaintiffs concede that the Passive Investment Funds did not act at all, it is not surprising that, even in a 78-page, 271-paragraph Complaint, the Passive Investment Funds are individually named only a handful of times. Throughout the Complaint, Plaintiffs rely upon collective pleading, insisting that all of the parties with an "Amaranth" name formed a "tightly knit association-in-fact" and are all responsible for the alleged violations. (Compl. ¶¶ 29, 32.) Well-established case law of this Circuit rejects pleading a claim under the CEA in such a manner.

Plaintiffs allege three counts against the Passive Investment Funds, each of which fails to state a claim. Count I contends that the Passive Investment Funds manipulated natural gas prices on the New York Mercantile Exchange ("NYMEX") in violation of the CEA, 7 U.S.C. § 1, et seq. This claim fails because even Plaintiffs concede that the Funds are passive investment pools, which by definition could not have engaged in a manipulation.

Count II suggests that the Passive Investment Funds are liable under theories of aiding

2

and abetting, vicarious liability, and controlling person liability. Plaintiffs' theories of secondary liability are no better than their direct approach. First, Plaintiffs' claim for aiding and abetting must fail because the Complaint is devoid of facts showing that the Passive Investment Funds knew of any violations of the CEA or willfully assisted such violations. Second, Plaintiffs do not state a claim for vicarious liability because the Complaint does not sufficiently allege that any of the Funds were principals with respect to the alleged manipulation. Third, Plaintiffs cannot assert controlling person liability, because there is no private right of action for this theory under the CEA, nor are there any well-pleaded allegations suggesting that the Funds did or could control Advisors' trading. Plaintiffs' last claim against the Passive Investment Funds, unjust enrichment (Count V), fails because it is preempted by federal law, and Plaintiffs do not plead facts showing that the Funds had the relationship with Plaintiffs required for an unjust enrichment claim, nor do they allege that the Funds received any benefit at Plaintiffs' expense.

In sum, the Court should dismiss the claims against the Funds with prejudice.

## FACTUAL BACKGROUND

### A.    Parties

Plaintiffs bring this action on behalf of a purported class consisting of persons who purchased, held or sold NYMEX natural gas contracts, or options on natural gas futures contracts, between February 16 and September 28, 2006 (the "Class Period"). (Id. ¶¶ 16-21, 228.) The Master Fund, a Cayman Islands company, is a multistrategy hedge fund that served as the Master Fund for the three feeder funds: AIL, a Bermuda company,[2] and the Domestic

---

[2] AIL, which did no business in the United States directly or indirectly, puts forth additional, distinctive arguments in a separate memorandum per the Court's directive during the parties' conference call with Chambers on June 2, 2008.

Feeders.[3]  (Id. ¶¶ 23, 26-27.)  Each of the Feeder Funds invested in the Master Fund.[4]  (Id. ¶ 23.)

Defendant Advisors, a Delaware limited liability company, "directed the investments" for the Master Fund "and employed natural gas traders," pursuant to its Advisory Agreement with the Master Fund.  (Id. at ¶ 22.)  This Agreement "broadly empowered" Advisors to manage the Master Fund's investments, which Advisors has at all material times done.  (Id.)  Advisors had no legal or contractual relationship whatsoever with AIL.  In addition, the trading in question is not alleged to have involved any of the Feeder Funds' assets.  Defendant Brian Hunter was the head natural gas trader for Advisors who developed the trading strategy alleged in the Complaint.  (Id. ¶¶ 30-31.)  Defendant Matthew Donohoe was the execution trader for Advisors who implemented this trading strategy.  (Id. ¶ 31.)  All the individual Defendants were employed by either Amaranth Advisors (Calgary) ULC or Advisors (id. ¶¶ 22, 29-31), and thus had no relationship, employment or otherwise, with the Passive Investment Funds.

Plaintiffs concede that Advisors, the Master Fund, AIL, and the Domestic Funds are "legally distinct" organizations.  Nonetheless, Plaintiffs lump these entities, Defendant Nicholas Maounis, Hunter, Donohoe, and other Amaranth entities together and collectively refer to them throughout the Complaint as "the Amaranth Defendants" or "Amaranth."  (Id. ¶ 33.)

---

[3] For the convenience of the Court, we are including arguments in this memorandum on behalf of the Domestic Feeders, which are represented separately by Winston & Strawn LLP. The Domestic Feeders have elected to join this memorandum in its entirety and Winston & Strawn LLP approves of the arguments regarding the Domestic Feeders included herein.

[4] A hedge fund, like Amaranth LLC, is structured similarly to a U.S. domestic mutual fund.  In both cases, the funds themselves are "managed portfolios," meaning that investors contribute their money into a common pot, which is then invested by a professional trading adviser or manager.  See Carl J. Nelson, Note, Hedge Fund Regulation: A Proposal to Maintain Hedge Funds' Effectiveness without SEC Regulation, 2 Brook. J. Corp. Fin. & Com. L. 221, 231 (2007) ("Mutual funds . . . are substantially similar in form to hedge funds.").

**B.      Allegations Against the Passive Investment Funds**

Plaintiffs refer to the Passive Investment Funds only a few times in their Complaint. These statements fail to explain how the Funds could be liable.  First, Plaintiffs assert that the Master Fund "held the manipulative positions in the NYMEX natural gas futures contracts at issue herein" (id. ¶ 23, see also id. ¶¶ 63, 245), although they are forced to concede that the Master Fund's role in doing so was merely "nominal" (id. ¶ 63).  Second, Plaintiffs confusingly allege that the Passive Investment Funds "controlled" Defendants (id. ¶ 255), were "control person[s]" (id. ¶¶ 23, 26, 27, 255), were "agents" of Defendants (id. ¶ 22), or were principals responsible for the actions of Defendants who served as the Passive Investment Funds' agents (id. ¶¶ 23, 26, 27).  Plaintiffs offer nothing to support these conclusory and contradictory assertions.  Third, Plaintiffs make the accusation that the Passive Investment Funds "willfully aided, abetted, counseled, induced, or procured the commission of violations of the Commodity Exchange Act" (id. ¶¶ 245-46), without identifying any willful actions by the Passive Investment Funds or alleging any facts suggesting that the Funds knew of any wrongful conduct.  The Master Fund's only "acts" identified in the Complaint are serving as a repository of financial assets (id. ¶ 23) and being the addressee of letters sent by NYMEX concerning Advisors' trading (id. ¶¶ 32, 147, 157, 161).[5]  The Feeder Funds only "act" identified is the allegation that they somehow "got the manipulation started by putting up funds for investment in Amaranth LLC." (id. ¶¶ 23, 26, 27, 246).

---

[5] Plaintiffs allege that the Master Fund "invested" monies received from investors.  (Id. ¶¶ 23, 26, 27.)  Plaintiffs also correctly state that "Defendant Amaranth Advisors was the entity that directed the investments and employed the natural gas traders."  (Id. ¶ 22.)  Thus, when Plaintiffs state that the Master Fund "invested" money, it means that Advisors invested the Master Fund's money on behalf of the its investors.  Plaintiffs' Complaint cannot suggest that the Master Fund itself invested in anything, since the Master Fund is a passive pool of assets.

**LEGAL STANDARD**

Under Second Circuit precedent, Plaintiffs' manipulation claims are automatically required to be reviewed under the standard articulated in Rule 9(b).[6] Even if that were not the case, however, Plaintiffs' manipulation claims sound in fraud and therefore implicate Rule 9(b) in any event.  In re Crude Oil Commodity Litig., No. 06 Civ. 6677, 2007 WL 1946553, at **4-5 (S.D.N.Y. June 28, 2007).  For example, Plaintiffs claim that Defendants "confused the natural gas markets . . . and caused Class members to transact at artificial prices."  (Id. ¶ 11 (emphasis added).)  Additionally, Plaintiffs' manipulation claims hinge on the alleged deception of investors as to the value of the natural gas contracts.  (See, e.g., Compl. ¶ 239 (alleging that each Defendant engaged in trading misconduct to move "the prices of NYMEX natural gas contracts to or at artificial levels") (emphasis added); see also  id. ¶ 2.)  Accordingly, Plaintiffs' claims sound in fraud and are subject to Rule 9(b).[7]

To avoid repeating a description of how courts apply Rule 9(b), the Passive Investment Funds refer the Court to Advisors' brief and join that discussion in its entirety.  The Passive Investment Funds simply observe that with respect to multiple defendants, "[b]road allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)."  Kolbeck v. LIT America, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998).  In

---

[6] The Funds join in Advisors' discussion of the Second Circuit's decision in ATSI, which held that a manipulation claim is subject to Rule 9(b).  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 101 (2d Cir. 2007) (in securities context, "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)").

[7] Moreover, Plaintiffs purport to bring a claim against Defendants under Section 4b, 7 U.S.C. § 6b, the antifraud provision of the CEA.  See infra at 21 n.16.

particular, to plead fraud, it is "not permissible" to group defendants under a single label.  FDIC

v. FSI Futures, Inc., No. 88 Civ. 0906, 1990 U.S. Dist. LEXIS 2907, at *27 (S.D.N.Y. Mar. 13,

1990) (in that case, "broker defendants").  Instead, a "well-pleaded complaint must not only

separate the deeds of the different defendants but clearly identify the fraudulent omissions or

misrepresentations of which they are accused."  Id.; see also Grossman v. Citrus Assocs. of N.Y.

Cotton Exch., Inc., 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing plaintiffs' CEA claim

under Rule 9(b) where "[t]he amended complaint simply sa[id] nothing about [the defendant],

except in the most general of terms in those 'kitchen sink' portions of the pleading where

everyone is alleged to have done everything in violation of the [CEA]").

Finally, Plaintiffs' allegations against the Passive Investment Funds do not even satisfy

the basic Rule 8 requirements for stating a claim because they are conclusory and fail to provide

facts in support of their legal conclusions.  See First Nationwide Bank v. Gelt Funding Corp., 27

F.3d 763, 771 (2d Cir. 1994); In re Crude Oil Commodity Litig., 2007 WL 1946553, at *3(citing

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).

## ARGUMENT

I.    **THE COMPLAINT FAILS TO STATE A CLAIM FOR MANIPULATION
UNDER THE CEA AGAINST THE PASSIVE INVESTMENT FUNDS (COUNT I).**

The Passive Investment Funds are not liable, as a matter of law, for manipulation of the

natural gas futures market.  As explained below, to establish a manipulation claim under the

CEA, Plaintiffs must allege that the Passive Investment Funds knowingly and intentionally took

affirmative steps to manipulate the market.  Plaintiffs concede that the Passive Investment Funds

did not act to manipulate the market; the Feeder Funds invested in the Master Fund, and the

Master Fund, in turn, delegated all trading and strategy decisions to Advisors.  (Compl. ¶ 22.)

Thus, under either the Rule 9(b) or even the Rule 8 standard for deciding a motion to dismiss,

there can be no basis for a claim of direct market manipulation against the Funds.

**A.     Plaintiffs Lack Standing to Sue the Feeder Funds as Primary Violators.**

Only certain plaintiffs have standing to assert CEA claims.  Section 22 of the CEA limits the universe of potential plaintiffs by providing that a plaintiff must be one:

> (A) who received trading advice from such a person for a fee;
> (B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;
> (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of [an option, a contract or an interest in a commodity pool]; or
> (D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

7 U.S.C. § 25(a)(1) (1994) ; see also Kolbeck, 923 F. Supp. at 566 (CEA § 22(a)(1) lists "four disjunctive 'conditions precedent,' at least one of which must be met in order to bring a private action for violation of the CEA").

Plaintiffs have none (and have alleged none) of the four requisite relationships with the three Feeder Funds.  First, Plaintiffs do not allege that they received trading advice from the Feeder Funds for a fee.  Second, Plaintiffs do not allege that they made any contract for sale of a commodity for future delivery through the Feeder Funds, or that Plaintiffs deposited funds with the Feeder Funds for that purpose.  Third, Plaintiffs do not allege that they purchased from, sold to, or placed order through the Feeder Funds for any option, contract, or interest in a commodity pool.  Fourth, Plaintiffs have not alleged that the Feeder Funds engaged in any acts of market manipulation.  The Complaint merely alleges that "investors invested directly into [the Feeder Funds], which invested substantially all of its capital in Amaranth LLC. . . .  Amaranth LLC then invested the funds on a global basis in a host of trading vehicles."  (Compl. ¶¶ 26-27.)

There is no allegation that the Feeder Funds' own assets were employed to purchase or sell any futures contracts, let alone used to manipulate the price of contracts purchased by Plaintiffs. Because plaintiffs cannot satisfy the CEA's conditions, their claims must be dismissed for lack of subject matter jurisdiction.  See Grossman, 706 F. Supp. at 230-31 (dismissing complaint for failure to meet CEA's "conditions precedent"); Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 260-61 (2d Cir. 2006).[8]

> **B.    Plaintiffs' Allegations Regarding Direct Market Manipulation Fail with Respect to All the Passive Investment Funds.**

Plaintiffs allege that Defendants, including the Passive Investment Funds, engaged in two types of manipulative trading.  First, Plaintiffs allege that the Passive Investment Funds "intentionally" manipulated settlement prices of the expiring natural gas futures contracts on three specific dates.  (Id. ¶¶ 2(e), 5, 118, 125, 144.)  Second, they contend that the Passive Investment Funds "intentionally" caused artificial prices for all NYMEX natural gas contracts throughout the Class Period.  (Id. ¶¶ 6(a), 178-82.)  Neither theory withstands scrutiny.[9]

---

[8] Section 22 of the CEA permits private plaintiffs to seek damages from any person who willfully "aids, abets, counsels, induces, or procures the commission of a violation" of the CEA. See 7 U.S.C. § 25(a)(1).  Courts in this Circuit have held, however, that even an alleged aider and abettor must stand in one of the four relationships enumerated in Section 22 for plaintiffs to have standing.  See Grossman, 706 F. Supp. at 230-31; Sundial Int'l Fund v. Delta Consultants, 923 F. Supp. 38, 41 (S.D.N.Y. 1996).  Because Plaintiffs have not alleged facts to support any of these relationships, Plaintiffs' aiding and abetting charge in Count II fails as to the Feeder Funds.

[9] As a threshold matter, any claims raised against the Passive Investment Funds under Sections 6(c)  and 6(d) of the CEA fail as a matter of law because there is no private right of action under those sections.  See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 619 F. Supp. 727, 740 (S.D.N.Y. 1985).  The statutory text of Sections 6(c) and 6(d) demonstrates that they only apply to claims brought by the CFTC.  See 7 U.S.C. § 9 (Section 6(c)); 7 U.S.C. § 13b (Section 6(d)).  Accordingly, Count I fails to state a cause of action against the Passive Investment Funds under Section 6(c) or 6(d) of the CEA.  See also Am. Agric. Movement v. Bd. of Trade of Chicago, 977 F.2d 1147, 1153 (7th Cir. 1992).

1.      Plaintiffs Lack Standing to Assert Manipulation of Settlement Prices.

Plaintiffs have no standing to assert their first manipulation claim—based on

manipulation of the settlement prices of the March, April and May 2006 NYMEX natural gas

contracts in violation of CEA Sections 9(a) and 22(a).  (See Compl. ¶¶ 2(e), 5, 118, 125, 144).[10]

With respect to this argument, the Passive Investment Funds concur with the Memorandum of

Law in Support of Motion to Dismiss the Corrected Consolidated Class Action Complaint by

Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC, ("Advisors

Mem.") and refer the Court to that brief to assert that Plaintiffs lack standing to press a claim

based on manipulation of settlement prices.

2.      Plaintiffs' Broader Market Manipulation Theory Also Fails to Satisfy Any
Pleading Standard.

Both Plaintiffs' settlement price and broader theories of manipulation—that the Passive

Investment Funds "intentionally" caused artificial prices for all NYMEX natural gas contracts

throughout the Class Period—are hopelessly defective as to the Passive Investment Funds.  (See

Compl. ¶ 178.)  To state a claim for manipulation, Plaintiffs must show the following:  "(1) the

defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the

defendant caused the artificial price; and (4) the defendant specifically intended to cause the

artificial price."  In re Crude Oil Commodity Litig., No. 06 Civ. 6677, 2007 WL 1946553, at *3

(S.D.N.Y. June 28, 2007).  With respect to the Passive Investment Funds, entities that are not

alleged to have made any trading decisions at all, the Complaint fails to describe any of these

_____

[10] Because Plaintiffs do not have standing to pursue a manipulation claim against the
Passive Investment Funds premised on settlement prices, any secondary liability claims raised in
Count II of Plaintiffs' Complaint must be premised on Plaintiffs' theory that these Funds
manipulated all natural gas contracts on the NYMEX during the Class Period.

elements with the detail required under either Rule 9(b) or 8(a).[11]

> (a)    Plaintiffs Do Not Plead Market Manipulation with the Requisite
> Particularity Under Rule 9(b).

None of the Complaint's references to the Passive Investment Funds demonstrate—or even vaguely suggest—that the Funds willfully manipulated natural gas contracts.  To satisfy Fed. R. Civ. P. 9(b), Plaintiffs' manipulation claim must specify what manipulative acts were performed, which Defendants performed them, when the acts were performed, and what effect the scheme had on the market.  See In re Natural Gas Commodity Litig., 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) (hereinafter, "Natural Gas II") (quoting SEC v. U.S. Envt'l, Inc., 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000)).

The only facts Plaintiffs can muster, as noted in the Factual Background Section, are that the Master Fund had a "nominal" role in holding positions in the NYMEX natural gas futures contracts and that the Master Fund was the addressee of letters sent by NYMEX concerning Advisors' trading.  See supra at 5.  The only allegation specific to AIL and the Domestic Funds is that these investment pools "got the manipulation started" by placing money with the Master Fund.  See id.  Serving as a nominal repository for assets, receiving a letter, and placing money in an investment pool do not constitute market manipulation under the CEA.

Recognizing their inability to identify specific facts with respect to the Passive Investment Funds, Plaintiffs lump them together with other Defendants who are alleged to have manipulated the price of natural gas futures.  Plaintiffs recognize that the Amaranth organizations are "legally distinct" entities.  (Compl. ¶ 32.)  Even so, Plaintiffs amalgamate the

---

[11] The Complaint also fails to allege any of these elements with respect to any claimed manipulation of settlement prices.  Thus, even if the Court were to find that Plaintiffs had standing to bring a CEA claim for manipulation of settlement prices, Plaintiffs have alleged nothing against the Passive Investment Funds that would support such a theory under either Rule 9(b) or Rule 8(a) as discussed infra.

Passive Investment Funds and other Defendants together under the label "Amaranth" and state, without any factual support, that Defendants "are in practice a tightly knit association-in-fact" (Compl. ¶¶ 32, 33). Rule 9(b) is not satisfied in a situation where plaintiffs make "[b]road allegations that several defendants participated in a scheme." Kolbeck, 923 F. Supp. at 569. Indeed, under Rule 9(b) it is "not permissible" to group defendants under a single label (e.g., "Amaranth Defendants"), and plaintiffs must clearly identify each defendant's role in the alleged misconduct. FSI Futures, Inc., 1990 U.S. Dist. LEXIS 2907, at *27; see also Kolbeck, 923 F. Supp. at 569. Thus, Plaintiffs' collective pleading approach to the manipulation claim against the Passive Investment Funds fails to satisfy Rule 9(b) and must be dismissed with prejudice.

> (b)    Even Under a More Relaxed Pleading Standard, Plaintiffs Fail in Count I to State a Claim for Which Relief Can Be Granted.

Even if the Court were to determine that Rule 9(b) was not applicable to Plaintiffs' claims, Plaintiffs still fail to state a claim for manipulation against the Passive Investment Funds. While courts must accept all factual allegations in the complaint as true in a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal quotation marks and citation omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002). Indeed, the notice pleading requirement of Rule 8(a) requires that the plaintiff provide each defendant notice of the claims against it. See Rudd v. KeyBank, N.A., No. C2-05-CV-0523, 2006 WL 212096, at *3 (S.D. Ohio Jan. 25, 2006) (dismissing complaint where plaintiff made identical allegations against all of the defendants because, in part, plaintiff's failure to "assert any details specifically against each individual [d]efendant" did not provide

each defendant with notice under Rule 8(a)(2)); cf. Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) ("In multiparty litigation . . . the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of each defendant giving rise to his claims.") (emphasis in original).

Because Plaintiffs have failed to allege facts to support a claim of manipulation as to the Passive Investment Funds, and do not provide these Funds with any notice of the claim against them, Count I fails to state a claim for relief and should be dismissed with prejudice.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING, VICARIOUS LIABILITY, OR CONTROLLING PERSON LIABILITY AGAINST THE PASSIVE INVESTMENT FUNDS UNDER THE CEA (COUNT II).

Likewise, the Passive Investment Funds are not liable, as a matter of law, for alleged manipulation of NYMEX natural gas contracts under any of Plaintiffs' theories of secondary liability:  aiding and abetting, vicarious liability, or control person liability.  As explained below, the aiding and abetting and vicarious liability claims fare no better than the primary manipulation claims in Count I because Plaintiffs do not allege facts about the Passive Investment Funds that come close to supporting any of these theories, particularly when scrutinized under Rule 9(b). With respect to Plaintiffs' control person liability, that theory fails because there is no private right of action for control person liability under the CEA, and there are no factual allegations suggesting that the Funds controlled Advisors in any event.

### A.    Plaintiffs' Aiding and Abetting Claim Fails.

Plaintiffs' conclusory allegations that the "Amaranth Defendants . . . knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein" (Compl. ¶ 253) and "willfully intended to assist the manipulation" (id. at ¶ 254) do not satisfy Rule 9(b), or

even the more lenient pleading standards of Rule 8(a).  See Natural Gas II, 358 F. Supp. 2d at 343 (applying Rule 9(b) to a CEA aiding and abetting manipulation claim); see also Krause v. Forex Exchange Mkt., 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005) ("Rule 9(b) applies also to [CEA] claims of aiding and abetting fraud.").[12]

Under Rule 9(b), courts stress that "a plaintiff seeking to state a cause of action for aiding and abetting liability under Section 22 of the CEA must allege that the aider and abettor acted knowingly." Damato v. Hermanson, 153 F.3d 464, 472 (7th Cir. 1998).  In other words, it is not sufficient to show that an entity knowingly associates itself with a primary violator of the CEA; rather, a plaintiff must allege that the "aider and abettor knowingly assists the principal in the attainment of the illegal objective." Id. (emphasis added).  In addition, "an aider and abettor must not only know of the principal's violation of law, they must willfully assist in the violation and share the principal's intent." Benfield v. Mocatta Metals Corp., No. 91-Civ-8255, 1992 WL 58879, at *6 (S.D.N.Y. Mar. 13, 1992).  The Benfield court found that, standing alone, "numerous allegations stating that defendants 'knew of' or were 'aware' of [the alleged misconduct] . . . would be insufficient to establish the intent necessary for aiding and abetting liability under the CEA."  Benfield v. Mocatta Metals Corp., No. 91-Civ-8255, 1992 WL 177154, at *3 (S.D.N.Y. July 13, 1992).

Besides a conclusory allegation that the Passive Investment Funds "knowingly" aided and abetted (Compl. ¶ 253), Plaintiffs allege nothing that would support the claim that the Funds knew about the alleged scheme.  Nor do Plaintiffs allege that the Funds intended to further the

---

[12] If the Court dismisses Plaintiffs' primary manipulation claims against Defendants, the Court's inquiry ends with respect to aiding and abetting liability.  See Tatum v. Legg Mason Wood Walker, Inc., 83 F.3d 121, 123 n.3 (5th Cir. 1996) ("In order to recover damages from a secondary party in an action for 'aiding and abetting' liability under the Commodity Exchange Act, a plaintiff must first prove that a primary party committed a commodities violation.").

purported trading misconduct or shared the primary violator's intent.  Thus, Plaintiffs' aiding and

abetting claims as to the Passive Investment Funds fail as a matter of law.

In addition, even if the Court were to find that Rule 9(b) did not apply to Plaintiffs'

aiding and abetting claim, Plaintiffs still have failed to state an aiding and abetting claim.

Plaintiffs' conclusory allegations fall far short of providing "direct or inferential allegations

respecting all the material elements to sustain a recovery," as required by Rule 8(a).  In re

Natural Gas Commodity Litig., 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004) (hereinafter, "Natural

Gas I") (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir.

2001)).  The bottom line is that Plaintiffs do not allege a single fact suggesting that the Passive

Investment Funds knew of the alleged scheme, let alone that they knowingly acted in furtherance

of it.  Accordingly, under any standard, the claims for aiding and abetting against the Funds fail.

### B.   Plaintiffs' Vicarious Liability Claim Fails.

Plaintiffs' vicarious liability claims, pled pursuant to CEA Section 2(a)(1)(B), 7 U.S.C. §

2(a)(1)(B), should be dismissed with prejudice pursuant to Rule 9(b), or in the alternative, Rule

8(a).[13]  See Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. Sirmer, No. 89-C-2239,

1989 WL 165155, at *6 (N.D. Ill. Dec. 27, 1989) ("Because the objectives underlying Rule 9(b)

apply with equal force to allegations against the employer of a violator, this court will examine

the derivative liability claim in light of the particularity requirements of Rule 9(b)."); see also

Kolbeck, 923 F. Supp. 557, 569.

Plaintiffs allege that the Passive Investment Funds are liable as "principals" responsible

for the conduct of their "agents," Advisors and Advisors employees.  The elements of agency

---

[13] There can be no vicarious liability as to the Passive Investment Funds if Plaintiffs do
not prevail on their primary manipulation claim against Defendants.  See Kolbeck, 923 F. Supp.
at 570 (dismissing claim against the principal for violation of CEA where plaintiffs failed to
adequately allege cause of action against the agent).

are: "(i) the manifestation by the principal that the agent shall act for him; (ii) the agent's acceptance of the undertaking; and (iii) the understanding of the parties that the principal is to be in control of the undertaking." Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (internal quotation marks omitted). "[V]ague assertions of agency . . . do not put defendants on notice of the claims against them, or enable them to prepare a defense." Kolbeck, 923 F. Supp. at 570.

Plaintiffs allege none of the elements of an agency relationship with respect to the Passive Investment Funds. For example, Plaintiffs do not allege that these Funds acknowledged that Advisors would be their agent during the relevant time in connection with trading activity. Moreover, there is no allegation in the Complaint that Advisors consented to be the Passive Investment Funds' agent in connection with the trading activity. Finally, Plaintiffs make no showing that the Passive Investment Funds exercised control over Advisors, or any other Defendant. See Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) ("An essential element of agency is the principal's right to control the agent's actions."). To the contrary, Plaintiffs state that "Advisors was the entity that directed the investments and employed the natural gas traders under the Advisory Agreement between Amaranth LLC and Amaranth Advisors." (Id. ¶ 22) (emphasis added.) [14] Conceding that a lone entity "directed" the investments, Plaintiffs recognize that the Funds did not control the trading at issue. Therefore, Plaintiffs have failed to plead the existence of an agency relationship and the claim should be dismissed. Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd., No. 97 Civ. 3802, 1998 WL 782024, at **5-6 (S.D.N.Y. Nov. 6, 1998) (Scheindlin, J.) (dismissing complaint which pled insufficient facts to establish an

---

[14] In addition, the existence of the Advisory Agreement, without a showing of control, is insufficient to support a principal-agent relationship between Advisors and the Master Fund.

agency relationship).

Not only are Plaintiffs unable to support a vicarious liability claim, but as the <u>Fidelity</u> court observed, it makes little sense to use vicarious liability in the context of the relationship between investment funds and their investment advisers.  <u>In re Fidelity/Micron Securities Litig.</u>, 964 F. Supp. 539 (D. Mass. 1997).  In <u>Fidelity</u>, the court dismissed plaintiffs' effort to hold a mutual fund vicariously liable under the securities laws for false statements made by the fund's investment adviser.  <u>Id.</u> at 544.  The court was persuaded that holding a mutual fund liable for the actions of its trading adviser was improper because the mutual fund at issue was "a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to individual investors holding shares in the fund."  <u>Id.</u> at 543 (internal citation omitted).  It observed that the "management of this asset pool is largely in the hands of an investment adviser, an <u>independent</u> entity which generally organizes the fund and provides it with investment advice, management services, and office space and staff."  <u>Id.</u> (emphasis added).  As in <u>Fidelity</u>, Advisors executed independent judgment over the trading at issue, which in no way involved the Funds.  (<u>See</u> Compl. ¶ 22.)  Dismissal here of Plaintiffs' vicarious liability claim is likewise appropriate.

Plaintiffs' vicarious liability case makes even less sense against the three Feeder Funds. The fact that Advisors is alleged to have acted on behalf of the Master Fund with respect to the trading in question, without more, does not extend vicarious liability to AIL or the Domestic Funds.  Indeed, investors, such as the three Feeder Funds, are not vicariously liable for the conduct of an agent of the entity in which they invest.  <u>See, e.g.</u>, <u>Meyer v. Holley</u>, 537 U.S. 280, 282 (2003) ("traditional agency principles . . . normally impose[] vicarious liability upon the corporation but not upon its officers or owners."); <u>Ez-Tixz, Inc. v. Hit-Tix, Inc.</u>, No. 93 Civ. 3791 (CSH), 1995 WL 77589, at *6 (S.D.N.Y. Feb. 27, 1995) ("[A] stockholder is not merely by

reason of his stock interest, liable at common law for any of the obligations of a corporation . . . .").

As a last resort, Plaintiffs fall back upon vague generalities, failing even to allege who specifically was the agent of the Passive Investment Funds or if these Funds were themselves agents.  (See Compl. ¶¶ 23, 238, 239, 255.)  The Complaint states that the parties undertook the alleged misconduct as "one another's control persons or agents" and asserts that each "Amaranth Defendant or its control person or agent" engaged in manipulation.  (Id. ¶¶ 238-39 (emphasis added).)  It claims that "Amaranth—per the trading decisions of Nicholas Maounis, Brian Hunter, Matthew Donahoe and other Amaranth agents and control persons—held and steadily added to massive natural gas contract positions on NYMEX and ICE."  (Id. ¶ 73 (emphasis added).)  It further claims that the Passive Investment Funds "are also liable . . . for the acts of their official, agents, and other person acting within the scope of their employment or office, including the Amaranth Defendants."  (Id. ¶ 23 (emphasis added).)  The terms "Amaranth Defendants" and "Amaranth," in turn, include the very same parties that are alleged to have been principals to the transactions in question.  Similarly ambiguous recitations of vicarious liability are made against each Defendant.  (See id. ¶¶ 22-31.)

These circular propositions are not sufficient under Rule 9(b) to plead a principal-agent relationship.  The fact that Defendants share "Amaranth" as part of their name is not enough to establish that these "legally distinct entities" (id. ¶ 32) are each other's agents.  See In re AM Int'l Inc. Sec. Litig., 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing complaint against Price Waterhouse entities after rejecting arguments that all Price Waterhouse affiliates worldwide were "in fact one entity, and acted as agents of one another"); see also Kolbeck, 923 F. Supp. at 569 (citations omitted).  Because Plaintiffs' vicarious liability claim is based on little more than

18

broad allegations that Defendants are guilty because of their associations with others, their vicarious liability claim must be dismissed.  See In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152, 170 (D. Mass. 2002)  ("Several courts have declined to treat different firms as a single entity, holding them jointly and severally liable for one another's acts, simply because they shared an associational name . . . .").

The court's decision in Natural Gas I is instructive.  In that case, the plaintiffs alleged that parent company defendants were vicariously liable under the CEA for the acts of their subsidiaries.  Natural Gas I, 337 F. Supp. 2d at 514-516.  The plaintiffs argued that vicarious liability could be established solely on the basis of the parent companies' ownership of their subsidiaries.  Id. at 515, 516.  The parent companies responded by noting that plaintiffs were alleging a veil piercing-type claim under the rubric of "vicarious liability," which required that they show the principal had "actual domination" over its subsidiary.  Id. at 515.

Similarly, these Plaintiffs couch their vicarious liability allegations against these Funds in an opaque veil piercing-like manner, contending that Defendants acted together as a "tightly knit association-in-fact" that worked as a "collective unit." (See Compl. ¶ 32.)  In responding to a near-identical argument in Natural Gas I, the court said:

> [T]he Court cannot ignore the equally well-established principles limiting piercing a corporate veil.  Plaintiffs have not identified, nor has the Court located, any case in which corporate parents were held liable for the actions of their corporate subsidiaries under § 2(a)(1)(B).  Rather, it appears that § 2(a)(1)(B) has been used as the doctrine of respondeat superior has traditionally been applied – to hold employers liable for the wrongs of their employees in certain situations.

Natural Gas I, 337 F. Supp. 2d at 515.

Stating that the Master Fund, as a repository for the trading positions, is liable for the decisions of Advisors, is similar to the plaintiffs in Natural Gas I arguing that a parent

corporation would be liable for its subsidiary's actions merely because it owned the subsidiary.

Moreover, Plaintiffs are asking the Court to brush past the strict requirements for veil piercing in

order to hold the three Feeder Funds liable simply because they (in Plaintiffs' words) "got the

manipulation started" by investing in the Master Fund.  If investing in a corporation that

allegedly engages in wrongful conduct (in this case, through a third-party investment adviser)

were a basis for shareholder liability, then the corporate form could be pierced in every case.

Such arguments were rejected in Natural Gas and should be rejected here.  Natural Gas I, 337 F.

Supp. 2d at 515-16 ("[s]uch is not the stuff of an adequate complaint").[15]

   **C.**    **There Is No Private Right of Action for Controlling Person Liability Under the CEA.**

Plaintiffs' last theory of secondary liability, alleged under the "control person" statutes

(see Compl. ¶¶ 23, 255) fails because the CEA does not provide a private right of action based

---

[15] Evolving precedent suggests that Plaintiffs do not even have a private right of action under the CEA to assert a vicarious liability claim.  Although Section 22(a)(1) (which governs private actions) authorizes lawsuits against aiders and abettors, it did not include language that would permit private plaintiffs to assert theories of vicarious liability under the CEA.  As the Supreme Court has noted, absent express Congressional authorization in the statute, such claims will not be implied.  See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177 (1994); see also Stoneridge Inv. Partners, LLC v. Scientific Atlanta, 128 S. Ct. 761, 772 (2008) (recognition of an implied right of action absent Congressional intent "necessarily extends [the judiciary's] authority to embrace a dispute Congress has not assigned it to resolve" and "runs contrary to the established principal that the jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation") (internal citations and quotations omitted); see also Bellikoff  v. Eaton Vance Corp., 481 F.3d 110, 116-17 (2d Cir. 2007).  Only the CFTC is authorized to pursue vicarious liability under the CEA and, notably, it has declined to do so against the Passive Investment Funds.  Previous decisions allowing vicarious liability under the CEA are therefore wrongly decided.  See, e.g., Kolbeck, 923 F. Supp. at 557.  This is particularly clear in light of Eaton Vance and subsequent decisions of the Supreme Court strictly construing implied private rights of action.  Moreover, rejection of vicarious liability in private actions under the CEA comports with the narrow statutory construction of Section 22 appropriately adopted by other courts.  See, e.g., Khalid Bin Alwaleed Found. v. E.F. Hutton & Co., Inc., 709 F. Supp. 815, 819-20 (N.D. Ill. 1989) (statutory history of Section 22 indicates "that Congress intended the private right of action to be a necessary exception to the general rule of CFTC enforcement and as such to be limited to its terms").

on control person liability.  In any event, there are no well pleaded allegations of control against the Funds.[16]

        1.      Section 13(b) of the CEA Does Not Provide a Private Right of Action.

Plaintiffs' claim for controlling person liability flouts the language of the statute and well-established case law, which holds that "[t]here exists no private right of action under Section 13(b) of the CEA."  Michelson, 619 F. Supp. at 739; see also 7 U.S.C. § 13c(b) ("Any person, who directly or indirectly, controls any person who has violated any provisions of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in an action brought by the Commission.") (emphasis added).  In Michelson, the court noted that this section "unambiguously provides for an administrative forum, that is, the Commodity Futures Trading Commission, to impose sanctions upon principals who control agents engaging in prohibited activity."  Id. at 739; see also Champ v. Siegel Trading Co., No. 89-C-7148, 1990 WL 19984, at *6 (N.D. Ill. Feb. 27, 1990).

In addition, courts have found that limiting the relief under Section 13(b) to actions brought by the CFTC is consistent with congressional intent.  Notably, "when Congress did not wish to limit a remedy to an action brought only by the CFTC, it made its intention clear by

---

[16] Plaintiffs cite to CEA Section 4(b), 7 U.S.C. § 6(b), pursuant to CEA Section 13(b), 7 U.S.C. § 13c(b) , and CFTC Rule 166.3, 17 C.F.R. § 166.3, in support of their control person allegations.  Section 4(b), 7 U.S.C. § 6(b), relates to the CFTC's regulation of foreign transactions, and Plaintiffs appear to have mistakenly cited this section, in lieu of Section 4b, 7 U.S.C. § 6b, the antifraud provision of the CEA.  Section 4b does not create a private right of action for controlling person liability.  Section 22 restricts actions for controlling person liability to CFTC enforcement actions.  Plaintiffs' attempt to end run Section 22 by alleging that a private cause of action for controlling person liability exists under CEA Section 4b "pursuant to CEA Section 13(b)" fails because, as discussed infra, Section 13(b) also does not create a private right of action for controlling person liability.  To the extent Plaintiffs are independently alleging a direct claim against the Passive Investment Funds pursuant to Section 4b, it fails.  First, a general fraud on the market is not recognized under Section 4b. See Korwek v. Hunt, 646 F. Supp. 953, 972 (S.D.N.Y. 1986). Second, Plaintiffs fail to satisfy Rule 9(b) as set forth supra.  See Kolbeck, 923 F. Supp. at 568.

affirmatively deleting such restrictive language." <u>Fustok v. ContiCommodity Servs., Inc.</u>, 618 F. Supp. 1069, 1073 (S.D.N.Y. 1985). Pertinent legislative history shows that "Congress did not intend derivative liability actions of this nature to be brought by private citizens." <u>Id.</u> at 1073. In fact, "Congress rejected the version of the controlling persons provision which was advocated by the CFTC that would have imposed a broader scope of liability than the statute in its present form." <u>Id.</u> (citing H.R. REP. NO. 565, at 126, <u>as reprinted in</u> 1982 U.S.C.C.A.N., at 3975). Because there is no private right of action, Plaintiffs have failed to state a claim for which relief can be granted. Furthermore, there is not a single non-conclusory allegation of control against the Funds. The Master Fund was passive, Advisors acted as an independent contractor, not as an agent, and the Feeder Funds were mere investors in the Master Fund with no control over Advisors.

  2.  There Is No Private Action for Violations of CFTC Rule 166.3.

  Similarly, Plaintiffs cannot avail themselves of CFTC Rule 166, 17 C.F.R. § 166.3, as a basis for liability against the Passive Investment Funds because it does not give rise to a private cause of action. In <u>Fustok</u>, the court held that "a private right of action under Rule 166.3 may not be implied." <u>Fustok</u>, 618 F. Supp. 1069, 1073-74 (S.D.N.Y. 1985); <u>see also</u> <u>CFTC v. Carnegie Trading Group Ltd.</u>, 450 F. Supp. 2d 788, 805 (N.D. Ohio 2006) (same); <u>Baghdady v. Robbins Futures, Inc.</u>, No. 97-C-8794, 1999 WL 162789, at *7 (N.D. Ill. Mar. 12, 1999) (same). Other district courts in this Circuit concur that "[t]here is no private action for violations of CFTC rules." <u>Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.</u>, 179 F. Supp. 2d 118, 158 (S.D.N.Y. 2000); <u>see also</u> <u>Nicholas v. Saul Stone & Co. LLC</u>, No. Civ. 97-860, 1998 WL 34111036, at *18 (D.N.J. June 30, 1998), <u>aff'd</u>, 244 F.3d 179 (3d Cir. 2000).

### III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT V).

Plaintiffs' common law unjust enrichment claim fails on multiple, independent grounds. As an initial matter, the claim is preempted by the CEA.  In <u>Credit Suisse Sec. (USA) LLC v. Billing</u>, 127 S. Ct. 2383 (2007) , the Supreme Court held that the enactment of the securities laws precluded the application of the antitrust laws to joint underwriting activity in the securities markets.  Similar considerations weigh against permitting Plaintiffs to bring state law claims for unjust enrichment related to trading of futures contracts on the NYMEX, particularly against passive investment vehicles.  First, trading of futures contracts falls squarely within the realm of conduct regulated by the CEA.  Second, the CEA grants the CFTC full authority to regulate trading of futures contracts on the NYMEX.  <u>See</u> 7 U.S.C. § 1, et seq. (2002).  Third, the application of state law unjust enrichment theories of liability to hold the Passive Investment Funds liable would directly conflict with the complex regulatory regime embodied in the CEA, and with federal policy concerning liability of investment funds for the acts of their investment advisors.  <u>See</u> 7 U.S.C. § 25 (expressly limits standing to seek private remedies to a subset of potential plaintiffs that stand in one of four enumerated relationships); S. REP. No. 101-337, at 16 n.17 (1990)  (1990) (passive investment vehicles should not be held liable for the conduct of their investment advisors).  Indeed, Courts in this Circuit have concluded that the CEA preempts similar state law claims.  <u>See</u> <u>DGM Invs., Inc. v. N.Y. Futures Exch., Inc.</u>, 265 F. Supp. 2d 254 (S.D.N.Y. 2003).

Even if the unjust enrichment claim were not preempted, plaintiffs have failed to state a claim.  Under New York law, "a cause of action for unjust enrichment requires a showing that (1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  <u>Clifford R. Gray, Inc. v.</u>

<u>Le Chase Constr. Servs., LLC</u>, 31 A.D.3d 983, 987-88 (3d Dep't 2006).  The Complaint fails to allege any of these elements as to the Passive Investment Funds.  Therefore, Plaintiffs' unjust enrichment claim must be dismissed.

First, Plaintiffs' claim fails because they do not allege that a "substantive relationship" existed between Plaintiffs and the Funds.  "An unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant." <u>Reading Int'l v. Oaktree Capital Mgmt.</u>, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (internal quotation marks and citation omitted); <u>see also</u> <u>Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.</u>, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), <u>aff'd</u>, 173 F.3d 845 (2d Cir. 1999) (Scheindlin, J.) (stating that although there need not be an express contract between the parties, to sustain an unjust enrichment claim, there must be a legally cognizable relationship). The Passive Investment Funds had no relationship with Plaintiffs, quasi-contractual or otherwise. And any claim of a relationship between Plaintiffs and the Feeder Funds is even more absurd given that they were mere investors in the Master Fund.

Second, Plaintiffs' unjust enrichment claim fails because the Complaint does not allege that the Passive Investment Funds are in possession of money or property that does not belong to them, or that Plaintiffs were counterparties to any of the transactions that the Passive Investment Funds benefited from.  <u>See</u> <u>In re Bayou Hedge Fund Inv. Litig.</u>, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (dismissing unjust enrichment claim where the complaint did not plead receipt of any benefit during the class period).

Third, it would be inequitable for the Court to order disgorgement against the Passive Investment Funds.  As this Court recognized in the securities context, "in order for the defendant's enrichment to be 'unjust' . . . it must be the fruit of willful deception".  <u>Louis</u>

24

Vuitton Malletier v. Dooney & Bourke, 500 F. Supp. 2d 276, 282 (S.D.N.Y. 2007) (Scheindlin, J.).  The Passive Investment Funds are not wrongdoers and holding them liable would serve no deterrent purpose.  Rather, they represent passive investors who – as a matter of public record – suffered billions of dollars in losses when the Funds collapsed.[17]  (Compl. ¶¶ 170-71.)

## CONCLUSION

For these reasons, Defendants Amaranth LLC, Amaranth International Limited, Amaranth Capital Partners LLC, and Amaranth Partners LLC respectfully request that this Court dismiss the Complaint with prejudice as to the Passive Investment Funds.[18]

Dated:   New York, New York
         June 23, 2008

         Respectfully Submitted,


         /s/  Amelia T.R. Starr                    /s/  Adam S. Hakki
         Amelia T.R. Starr (AS 2286)               Herbert S. Washer (HW 2375)
         Sheldon L. Pollock (SP 8696)              Adam S. Hakki (AH 3561)
         Dharma B. Frederick (DF 1821)             Kirsten N. Cunha (KC 0283)
         DAVIS POLK & WARDWELL                     SHEARMAN & STERLING LLP
         450 Lexington Avenue                      599 Lexington Avenue
         New York, New York 10017                  New York, New York 10022-6069
         Tel: (212) 450-4000                       Tel.: (212) 848-4000
         Fax: (212) 450-3800                       Fax: (212) 848-7179


         *Counsel for Amaranth LLC*                 *Counsel for Amaranth International Limited*

---

[17] Because Plaintiffs fail to state a claim for unjust enrichment, their request for the imposition of a constructive trust also fails.  Modica v. Modica, 791 N.Y.S.2d 134, 135 (2d Dep't 2005) (unjust enrichment is a requirement for a court to impose a constructive trust).

[18] The Complaint should be dismissed in its entirety with prejudice as to the Passive Investment Funds because Plaintiffs already have had the benefit of pre-complaint discovery and an opportunity to replead.  The Funds join Advisors' brief on this point.